Christopher M. Mason (SBN: 019891)
Glen B. Hotchkiss (SBN: 012194)
**BUCHALTER,**
**A PROFESSIONAL CORPORATION**
15279 N. Scottsdale Road, Ste. 400
Scottsdale, Arizona 85254-2659
Telephone: (480) 383-1800
Facsimile: (480) 824-9400
Email:  cmason@buchalter.com
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sonia Mason,<br><br>    Plaintiff,<br><br>    v.<br><br>Universal Technical Institute, Inc., Jerome A. Grant, Tracy Lorenz<br><br>    Defendants. | No.<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Plaintiff Sonia Mason, for her Complaint against Defendants Universal Technical Institute, Inc. ("UTI"), Jerome A. Grant ("Grant"), and Tracy Lorenz ("Lorenz"), alleges as follows:

## JURISDICTION AND VENUE

1.  This case arises under the whistleblower protection provisions of Section 806 of the Sarbanes-Oxley Act of 2022 ("SOX"), 18 U.S.C. § 1514A et seq.

2.  Jurisdiction is proper in the District of Arizona pursuant to 18 U.S.C. § 1514A(b)(1)(B) and 28 U.S.C. § 1331.

3.  Plaintiff timely filed a complaint ("DOL Complaint") with the Secretary of Labor within 180 days of the retaliatory acts in compliance with 18 U.S.C. § 1514(b)(1)(A) and (b)(2)(D).  More than 180 days have elapsed since Plaintiff filed the DOL Complaint and, therefore, Plaintiff has exhausted her administrative remedies pursuant to 18 U.S.C. § 1514A(b)(1)(B).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) & (2) because Plaintiff resides in Maricopa County, Arizona, Defendant UTI is a resident of, and with its corporate headquarters in, the State of Arizona, and because a substantial part of the events or omissions giving rise to the claim occurred in the State of Arizona.

**PARTIES**

5. Plaintiff Sonia Mason was the Chief Human Resources Officer for Defendant Universal Technical Institute, Inc. ("UTI") starting July 20, 2020 until her unlawful termination on July 24, 2023.

6. Defendant UTI is a publicly traded Delaware corporation doing business in the State of Arizona. It has corporate headquarters located at 4225 E. Windrose Drive, Suite 200, Scottsdale, Arizona 85032. It represents itself as a secondary education trade school. Defendant UTI, through its subsidiaries and affiliates, provides a wide variety of trade educational services to students, and provides training programs in conjunction with and through a variety of employers, including through programs supported by the United States government.

7. Defendant UTI receives much of its funding through government-sponsored student loans, for which it is obligated to comply with the requirements of the Higher Education Act, 20 U.S.C. §1001 et seq. ("HEA").

8. Defendant Jerome A. Grant ("Grant") is a married man who resides in Maricopa County, Arizona. At all times mentioned herein, Defendant Grant was the Chief Executive Officer ("CEO") of UTI.

9. Defendant Tracy Lorenz ("Lorenz") is a married woman who resides in Kane County, Illinois. At all times relevant to Defendant Lorenz's involvement in the actions mentioned herein, Defendant Lorenz was the Division President of UTI.

**SUMMARY OF CLAIMS**

10. Plaintiff engaged in protected activity under Section 806 of SOX while employed by Defendant UTI. Plaintiff made numerous disclosures over a period of months prior to her termination on July 24, 2023 based upon her reasonable belief that Defendants

UTI and Grant engaged in conduct that constituted securities fraud, and which conduct violated rules and regulations of the Securities and Exchange Commission ("SEC"), and/or which constituted a fraudulent scheme or artifice against Defendant's customers, investors and the United States government through the Postal Service, interstate carriers, and/or interstate wire, and/or which constituted a fraudulent scheme or artifice against financial institutions.

11. Plaintiff's reasonable belief of these violations was formed after Plaintiff became aware that Defendant UTI was non-compliant with the HEA and interpretive regulations governing incentive compensation paid to student recruiters, regulations governing affirmative action compliance requirements, and UTI's internal controls and requirements governing both and governing its anti-harassment policies; that Defendant UTI made representations to shareholders inconsistent with the aforementioned violations or otherwise failed to disclose them to shareholders; that Defendant UTI failed to maintain proper disclosure controls related to misconduct; and that Defendant UTI failed to take prompt and effective remedial action to correct or make appropriate disclosures to the SEC or investors about these violations.

12. Plaintiff reported her concerns about these matters over an extended period of time to management officials including Defendants Grant and Lorenz. Notwithstanding Plaintiff's various reports of such violations to Defendants, no action was taken to remedy the misconduct.

13. In retaliation for her protected disclosures, over the course of approximately six months until her termination, Plaintiff was subject to harassment by Defendants UTI, Grant, and Lorenz, specifically expressions of hostility in response to protected disclosures, subjecting her to a pattern and practice of harassment, including by removing her from certain projects and her normal chain of reporting.

14. In further retaliation for her protected disclosures, Plaintiff was terminated from her position as Chief Human Resources Officer on July 24, 2023 and blacklisted from other human resources positions with UTI. Defendants UTI, Grant, and Lorenz were

BN 80358179v1

directly involved in the termination and blacklisting.

15. Moreover, after her termination and following notification to UTI that she intended to pursue a SOX complaint against it, UTI further retaliated by sending a notice by Postal Service for money to Plaintiff's son, demanding in excess of $15,000 for existing student enrollment benefits for which he should not have been charged because they were incidental to and a benefit of Mason's employment with UTI.

16. Finally, following her termination and notification to UTI that she intended to pursue a SOX complaint against it, UTI further retaliated by summarily refusing to consider her for the new position as Vice President of HR, despite being eminently qualified for the position.

## FACTUAL BACKGROUND

17. Plaintiff started working for Defendant UTI on July 20, 2020 as the Chief Human Resources Officer.

18. At no time since she was hired up through the date of her termination had Plaintiff ever been subject to any type of performance coaching or discipline. In fact, all feedback she received was positive, and her annual merit increases were in excess of budgeted company amounts, reflecting approval for her work.

19. During her years of service to Defendant UTI, Plaintiff stabilized and improved the human resources department that had been in turmoil over the lack of prior leadership and direction, attracted quality personnel, substantially reduced employee benefit cost without reducing benefits, rebranded the department, and enhanced policies and procedures.

20. Plaintiff was highly respected and appreciated by her department and she received countless accolades for her work and support.

A. **Plaintiff's Reporting of Concerns**

21. Plaintiff established herself as a compliance advocate, and supported compliance with legal, regulatory, and organizational requirements.

22. For instance, over many months, including during the first half of 2023,

Plaintiff disclosed on-going concerns with the failure to comply with HEA requirements and UTI policy governing incentive compensation paid to UTI student recruiters and managers.

23. Such violations were material given that UTI's primary source of revenue generates from student loan funding, and given Defendant UTI's false representations and/or the failure to disclose such violations to shareholders and/or the SEC.

24. Plaintiff repeatedly stated, both verbally and in writing, including without limitation to Defendants Grant and Lorenz, that UTI's practices violated HEA requirements, which implicated UTI's ability to receive federal funding through student loan programs.

25. UTI's actions in accepting federal funds in violation of HEA requirements, and failing to report such violations or otherwise misrepresenting its compliance with legal requirements to shareholders, constituted unlawful conduct in violation of federal law.

26. Plaintiff had an actual, reasonable, and good faith belief, that UTI's practices violated HEA requirements, constituted fraud on shareholders and regulators, and that it otherwise violated federal fraud statutes and regulations, and constituted fraudulent conduct including without limitation, mail fraud, wire fraud, bank fraud, and securities fraud.

27. Plaintiff also reported concerns and opposed an on-going pattern of harassment and misconduct by executives at UTI, including efforts by its CEO to prevent a harassment investigation of UTI's Chief Financial Officer, Troy R. Anderson, after an anonymous internal complaint against him. Furthermore, Plaintiff reported that she believed that there were widespread problems at UTI with harassment and discrimination.

28. The violations were material because they reflected an on-going, extensive, pattern and practice of unlawful harassment and discrimination and could interfere with UTI's operations, funding, and revenues, and given Defendant UTI's false representations and/or the failure to disclose such violations to shareholders and/or the SEC.

29. Plaintiff repeatedly stated, both verbally and in writing, including without

limitation to Defendants Grant and Lorenz, that UTI's practices violated UTI's practices and policy, which were reported to UTI shareholders, which implicated UTI's obligation to maintain a workplace free of discrimination and unlawful harassment.

30. UTI's actions in circumventing its requirements to maintain a workplace free of discrimination and unlawful harassment, and its own policies and practices as represented to its shareholders, and failing to report such violations or otherwise misrepresenting its compliance with legal requirements to shareholders, constituted unlawful conduct in violation of federal law.

31. Plaintiff had an actual, reasonable, and good faith belief, that UTI's practices violated legal requirements, constituted fraud on shareholders and regulators, and that it otherwise violated federal fraud statutes and regulations, and constituted fraudulent conduct including without limitation, securities fraud.

32. Plaintiff also reported concerns and opposed practices by UTI executives intended to circumvent affirmative action requirements and UTI policy regarding such requirements.

33. Such violations were material because they potentially compromised UTI's eligibility for federal funding, could interfere with UTI's operations and policy, and given UTI's false representations and/or the failure to disclose such violations to shareholders and/or the SEC.

34. Plaintiff repeatedly stated, including without limitation to Defendants Grant and Lorenz, that UTI's practices violated affirmative action reporting requirements, which implicated UTI's ability to receive federal funding.

35. UTI's actions in accepting federal funds in violation of affirmative action requirements, and failing to report such violations or otherwise misrepresenting its compliance with legal requirements to shareholders, constituted unlawful conduct in violation of federal law.

36. Plaintiff had an actual, reasonable, and good faith belief, that UTI's practices violated affirmative action requirements, constituted fraud on shareholders and regulators,

and that it otherwise violated federal fraud statutes and regulations, and constituted fraudulent conduct including without limitation, mail fraud, wire fraud, bank fraud, and securities fraud

37. Defendants were aware of Plaintiffs' protected activity, as described above.

### C. **Defendants' Harassment and Termination of Plaintiff**

38. In approximately March of 2023, Defendant Grant notified Plaintiff that he was temporarily realigning her reporting structure so that she would report to Lorenz once Lorenz began working for UTI. Until then, Plaintiff had consistently reported to Grant.

39. Over the ensuing months, Defendant Grant took additional measures to leave Plaintiff feeling isolated, and to pressure others to implement retaliatory actions against Plaintiff.

40. On July 24, 2023, Defendant Lorenz notified Plaintiff that she would be terminated by UTI, but did not provide any explanation or reason for Plaintiff's termination.

41. Defendant Lorenz further informed Plaintiff at the time that she could work out a reasonable period of time before her actual separation, and the circumstances and message that could be communicated about her separation.

42. When Plaintiff responded that she felt the decision and actions were discriminatory, Defendants further retaliated by immediately terminating her employment, and impairing her reputation with the message they communicated impliedly suggesting that she was being terminated for misconduct.

43. Furthermore, Defendants informed Plaintiff that she would not be eligible for other human resources positions with UTI, thereby blacklisting her from those positions.

44. Plaintiff was never informed of any reason for her termination at or near the time of her termination. Plaintiff has only since been informed through UTI's legal counsel in writing that "UTI has not suggested that it terminated [her] employment for cause" and that it merely concluded "she was not the right candidate for leading UTI's human resources function in its next chapter at either the corporate or divisional level."

45. Internally, Defendant UTI has reported inconsistent reasons and the roving mischaracterization of Plaintiff's termination

**D.     Defendants' Further Post-Termination Retaliation**

46. Plaintiff also notified Defendant UTI in writing that she intended to pursue a complaint for violation of Section 806 of SOX and to proceed with notifications of UTI violations, including to the SEC.

47. Subsequently, Defendant UTI sent a written notice by Postal Service to Plaintiff's son demanding that he pay in excess of $15,000 for student enrollment fees, and threatening to turn the matter over to which would negatively impact his credit. Student enrollment for Plaintiff's son was a free benefit of Plaintiff's employment with UTI, as her son was already an active, enrolled, student at the time of her separation. UTI's existing policy and practice provided that no such fees should be charged under such circumstances. Plaintiff's son was only first made aware of such fees and the demand for payment after he graduated from UTI and at no prior time was informed that he would be required to pay such fees.

48. Additionally, in approximately January of 2024, Defendant UTI summarily refused to consider Plaintiff's application for a new Vice President of HR position, despite being eminently qualified for the position.

## FIRST CAUSE OF ACTION

**(Retaliation in Violation of the Sarbanes-Oxley Act - 18 USC § 1514A)**

49. Plaintiff incorporates herein all of the forgoing allegations in this Complaint as though fully set forth herein.

50. At all material times, Section 806 of the Sarbanes Oxley Act of 2002 was in effect and binding on Defendants. Among other things, it prohibits Defendants from discharging, constructively discharging, demoting, threatening, harassing, or in any manner discriminating or retaliating against any employee because that employee reported designated misconduct as delineated in the Sarbanes Oxley Act of 2002, to a person with supervisory authority over the employee, or such other person working for the employer

1. who has the authority to investigate, discover, or terminate the misconduct.

51. For purposes of Section 806 of the Sarbanes Oxley Act of 2002, any employee who reports conduct constituting (a) mail fraud, (b) wire fraud, (c) bank fraud, (d) securities fraud, (e) a violation of any rule or regulation of the SEC, or (f) a violation of any provision of federal law relating to fraud against shareholders.

52. Following Plaintiff's reporting of concerns to Defendants which she reasonably believed fell within one or more of the violations listed in Section 806 of SOX, 18 U.S.C. §1514A(a)(1), over the course of approximately six months until her termination on July 24, 2023, she was subjected to harassment and retaliation due to her protected disclosures.

53. Defendants' harassment and retaliation against Plaintiff and her termination is a violation of Section 806 of SOX.

54. Defendants were aware of Plaintiff's protected activity under SOX because Plaintiff raised her concerns and other protected disclosures directly to Defendant UTI's management and executives, including without limitation Defendants Grant and Lorenz, and they were aware that Plaintiff was protected as a whistleblower.

55. As a result of Plaintiff's protected activity, Defendants took adverse actions against Plaintiff in the form of harassment, expressions of hostility in response to protected disclosures, subjecting Plaintiff to a pattern and practice of harassment, abuse and retaliation over a period of months, and Defendants orchestrated a campaign to terminate her employment and blacklisted her from other human resources positions with UTI.

56. Furthermore, Defendants took adverse action against Plaintiff in the form of retaliatory termination, retaliatory blacklisting, and retaliatory demands for money from her son.

57. Plaintiff's protected disclosures under SOX were a contributing factor to the harassment, hostile work environment, termination, blacklisting, and demand for payment from her son, as supported by the circumstances, including without limitation the lack of any meaningful reasons for the actions and the temporal proximity between her protected

activity and the adverse employment actions.

58. As a direct and proximate result of the alleged violations, Plaintiff has suffered loss of employment opportunities (including reputation in the industry and compensation), lost backpay and frontpay compensation damages, special damages including emotional distress and reputational harm, and attorneys' fees and litigation costs. Plaintiff is entitled to full relief as permitted by Section 806 of SOX to make Plaintiff whole.

## **DEMAND FOR JURY TRIAL**

59. Plaintiff hereby requests a jury trial on all claims triable by jury.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

A. Reinstatement to the position of Chief Human Resources Officer.

B. Front pay, including without limitation lost salary, raises, bonuses, benefits, and stock, all with interest.

C. Back pay, raises, bonuses, benefits, stock, all with interest, and other orders necessary to make Plaintiff whole.

D. An Order prohibiting Defendants from disclosing any disparaging information about Plaintiff to prospective employers, or otherwise interfering with any application she might make in the future.

E. Compensatory damages, including but not limited to any special damages, in an amount determined to be fair and equitable compensation for Plaintiff's emotional distress and loss of reputation, sustained as a result of the harassment and retaliation.

F. Reasonable attorneys' fees, litigation costs and expert witness fees.

G. An order requiring Defendant UTI to issue a notice, and provide copies to all of its employees, such notice providing (1) that Defendants violated the rights of Plaintiff and that they were Ordered to make her whole, (2) the name and address where complaints of Sarbanes Oxley violations may be sent, and (3) information to employees that complaints must be filed within specified time limits after any adverse action.

H.      Such other and further relief necessary to make the Plaintiff whole and to abate the violations.

DATED this 28th day of January, 2025.

**BUCHALTER, A PROFESSIONAL CORPORATION**

By: /s/ Christopher Mason
    Christopher M. Mason, Esq.
    Glen B. Hotchkiss, Esq.
    15279 N. Scottsdale Road, Ste. 400
    Scottsdale, Arizona 85254-2659
    *Attorneys for Plaintiff*

BN 80358179v1